**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 2:11-CR-216-DBH** |
| | ) | **CIVIL NO. 2:16-CV-346-DBH** |
| **CHARLES H. CASEY, JR.** | ) | |
| | ) | |
| **DEFENDANT/PETITIONER** | ) | |

**DECISION AND ORDER ON PETITIONER'S MOTION TO
CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

In 2012, Charles H. Casey, Jr. pleaded guilty to being a felon in possession of a firearm.  18 U.S.C. § 922(g)(1).  At his sentencing, I determined that Casey had been convicted of three qualifying prior crimes of violence and accordingly sentenced him to 180 months under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).  Judgment at 1–2 (ECF. No. 65).  Without Armed Career Criminal status, Casey's maximum sentence would have been 10 years.  18 U.S.C. § 924(a)(2).[1]

Following the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), holding the ACCA's "residual" clause unconstitutional, Casey filed a motion to correct his sentence under 28 U.S.C. § 2255.  Def.'s Mot. to Correct Sentence (ECF No. 68).  In response, the government argued that Casey was procedurally barred from his Johnson claim and that his prior Maine

---

[1] I disagree with the government's assertion that, even without Armed Career Criminal status, Casey could have been sentenced to 180 months.  Gov't Resp. in Opp'n to Def.'s Mot. to Correct Sentence at 6 (ECF No. 72).  Casey pleaded guilty to and was sentenced on a single count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).  That crime has a statutory cap of 120 months imprisonment, 18 U.S.C. § 924(a)(2), unless he was an Armed Career Criminal.

burglary convictions, see 17-A M.R.S.A. § 401, still qualify as predicates under the ACCA's "enumerated" clause.  Gov't Resp. in Opp'n to Def.'s Mot. to Correct Sentence (ECF No. 72).

Because extant First Circuit caselaw holds that Casey's prior Maine burglary convictions remain qualifying *enumerated* violent felonies even after *Johnson*'s invalidation of the residual clause, he is unable to show actual prejudice.  I therefore **DENY** Casey's motion to correct his sentence.

## ANALYSIS

### *(1)     Procedural Default*

The government argues that Casey is not entitled to relief because he is procedurally barred from making his <u>Johnson</u> claim.  It is well-settled that "[c]ollateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by fail[ing] to raise [the] claim in a timely manner at trial or on [direct] appeal."  <u>Bucci v. United States</u>, 662 F.3d 18, 27 (1st Cir. 2011) (alteration in original) (internal quotation marks omitted).  At his sentencing, Casey did not argue that the residual clause of the ACCA was unconstitutionally void for vagueness, nor did he appeal his sentence.  But I can excuse Casey's procedural default if he "show[s] both (1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error."  <u>Bucci</u>, 662 F.3d at 27 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 167–68 (1982)).[2]

---

[2] I can also excuse Casey's procedural default if he shows "actual innocence."  <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).  To establish "actual innocence," Casey must show "factual innocence, not mere legal insufficiency."  <u>Id</u>.  Because Casey's prior Maine burglary convictions remain qualifying felonies under the ACCA, however, I reject his argument that he is actually

### (i)     Cause

According to the Supreme Court, cause is satisfied "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984).[3]  The Court has identified three such instances of novelty: (1) "a decision of this Court may explicitly overrule one of our precedents"; (2) "a decision may overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved"; and (3) "a decision may disapprov[e] a practice this Court arguably has sanctioned in prior cases."  468 U.S. at 17 (alteration in original) (internal quotation marks omitted).  The Court added that "[b]y definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court[4] to adopt the position that this Court has ultimately adopted." Id.  In such instances, the failure of the defendant's attorney to raise the claim "is sufficiently excusable to satisfy the cause requirement." Id.

---

innocent of being an Armed Career Criminal, see Def.'s Reply on Issue of Procedural Default at 10–12 (ECF No. 76).

[3] Although Reed concerned 28 U.S.C. § 2254, the First Circuit has ruled that "[t]here is no reason to think that the definition of 'cause' will vary between" section 2254 and section 2255. Simpson v. Matesanz, 175 F.3d 200, 211 (1st Cir. 1999).

[4] The First Circuit uses the Reed standard for defendants sentenced in a federal district court as well.  See, e.g., Berthoff v. United States, 308 F.3d 124, 128 & n.3 (1st Cir. 2002) (determining that a petitioner who was seeking relief under section 2255 had not shown cause because his claim was not "novel" to a federal district court under the Reed standard); see also Davis v. United States, 417 U.S. 333, 344 (1974) ("No microscopic reading of § 2255 can escape either the clear and simple language of § 2254 authorizing habeas corpus relief 'on the ground that (the prisoner) is in custody in violation of the . . . laws . . . of the United States' or the unambiguous legislative history showing that § 2255 was intended to mirror § 2254 in operative effect." (alteration in original)); Simpson, 175 F.3d at 210–12 (1st Cir. 1999).

Casey argues that his case involves a straightforward application of Reed's first prong because in Johnson, 135 S. Ct. at 2563, the Supreme Court held that the residual clause of the ACCA violated due process, overruling its prior decisions in James v. United States, 550 U.S. 192 (2007), and Sykes v. United States, 564 U.S. 1 (2011). The Court subsequently ruled in Welch v. United States, 136 S. Ct. 1257, 1268 (2016), that Johnson announced a new substantive rule that applied retroactively to cases on collateral review.

The government contends, however, that Casey's argument regarding the unconstitutional vagueness of the residual clause was not "novel" at the time of his sentencing. Gov't Resp. in Opp'n to Def.'s Mot. to Correct Sentence at 4–5 (ECF No. 72). In support, the government cites the declaration in Bousley v. United States that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" 523 U.S. 614, 623 (1998) (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)). But Bousley did not deal with a case where the Supreme Court overruled its own precedents.[5] Rather, the Court recognized that, in the absence of controlling Supreme Court precedent "at the time of [Bousley]'s plea, the Federal Reporters were replete with cases involving challenges to the notion that 'use' is

---

[5] In Bousley, the petitioner pleaded guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1). Bousley, 523 U.S. at 616. Five years later, while his appeal was pending, the Supreme Court decided in Bailey v. United States, 516 U.S. 137, 144 (1995), that section 924(c)(1)'s "use" prong required the government to show "active employment of the firearm," not "mere possession." Bousley consequently sought collateral relief under 28 U.S.C. § 2255, arguing that the legal basis to attack his guilty plea was not "reasonably available" at the time of his plea. But Bailey did not overrule precedent. See Bousley, 523 U.S. at 625 (Stevens, J., concurring in part and dissenting in part) ("This case does not raise any question concerning the possible retroactive application of a new rule of law, because our decision in Bailey v. United States did not change the law." (citations omitted)).

synonymous with mere 'possession.'" Bousley, 523 U.S. at 622. Thus, even though Bousley's sentencing argument may have been "unacceptable to that particular court at that particular time," he could not establish cause for having failed to raise it, as his argument did not match any of the three Reed criteria for novelty.[6] That is not this case.

The government correctly points out that prior to Johnson, Justice Scalia had on multiple occasions in dissent suggested that the Court hold the residual clause void for vagueness. Derby v. United States, 131 S. Ct. 2858, 2859–60 (2011) (Scalia, J., dissenting from denial of certiorari); Sykes v. United States, 564 U.S. 1, 28 (2011) (Scalia, J., dissenting), overruled by Johnson, 135 S. Ct. 2551 (2015); James v. United States, 550 U.S. 192, 230–31 (2007) (Scalia, J., dissenting), overruled by Johnson, 135 S. Ct. 2551 (2015). The government asserts that because Justice Scalia had explicitly raised the argument that the residual clause was unconstitutionally vague, the argument was not "novel."

This argument, however, overlooks the distinction between Reed and Bousley. In Reed, the Supreme Court plainly stated that a claim is "novel" when the Court "explicitly overrule[s] one of our precedents." 468 U.S. at 17. In Bousley, on the other hand, the Supreme Court ruled that a claim is not "novel"

---

[6] Bousley controlled the First Circuit's ruling in Brache v. United States, 165 F.3d 99 (1st Cir. 1999). In Brache, the petitioner did not object to an overbroad jury instruction regarding the "use" of a firearm under section 924(c)(1) before the Supreme Court adopted a narrower definition in Bailey. Similar to Bousley, Brache argued that he had shown cause because there was "no reasonable basis in existing law" to challenge the broad definition of "use" in the jury instruction. Brache, 165 F.3d at 102 (internal quotation marks omitted). The First Circuit noted that "the instruction was at the time correct under First Circuit precedent," and therefore could not have been challenged successfully. Nevertheless, the court concluded that Bousley foreclosed a showing of cause for Brache's failure to challenge the instruction, quoting the Bousley language that "the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession' at the time of the . . . plea." Brache, 165 F.3d at 102.

when it has been raised in the lower courts but not yet decided by the Supreme Court.[7]  To be sure, in the wake of Bousley, "the First Circuit has made it clear that the fact that there are *First Circuit* precedents that hold against the movant's argument does not suffice to establish futility." United States v. Dean, 231 F. Supp. 2d 382, 386 (D. Me. 2002) (emphasis added).[8]  Yet the government does not and cannot point to any authority suggesting that Reed does not apply when the Supreme Court expressly overrules *its own* prior precedent.  See Simpson v. Matesanz, 175 F.3d 200, 211–12 (1st Cir. 1999).  Nor has the Court given any indication that Reed no longer remains good law.  See Bousley, 523 U.S. at 622; cf. Hohn v. United States, 524 U.S. 236, 252–53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.").  I conclude that under Reed, Casey's Johnson claim is a novel constitutional claim that applies retroactively, and he has therefore shown cause for his default.

### (ii)   *Prejudice*

To show prejudice, the petitioner must demonstrate "a reasonable probability" that but for the alleged error, "the result of the proceeding would have been different." Prou v. United States, 199 F.3d 37, 48–49 (1st Cir. 1999) (internal quotation marks omitted).  That in turn depends on whether Casey's

---

[7] As the Supreme Court reiterated most recently, "[I]t is this Court's prerogative alone to overrule one of its precedents." Bosse v. Oklahoma, 192 L. Ed. 2d 1, 3 (Oct. 11, 2016) (per curiam) (alteration in original) (quoting United States v. Hatter, 532 U.S. 557, 567 (2001)).

[8] The First Circuit has declared that "Bousley made it clear that if an issue has been decided adversely to an argument in the relevant jurisdiction, and the argument is not made for that reason, that is insufficient reason to constitute cause for a procedural default." Simpson v. Matesanz, 175 F.3d 200, 211 (1st Cir. 1999).  Nonetheless, the First Circuit continues to treat Reed as good law.  Simpson, 175 F.3d at 212, 215.

prior Maine burglary convictions still constitute predicate offenses under the ACCA's enumerated clause.  Although Casey has a strong argument that they do not, the current state of First Circuit caselaw is against him as I describe below, and he will have to make his argument challenging that caselaw in an appeal to the First Circuit.  At this stage, he has not shown prejudice.[9]

**(2)      *Maine Burglary Convictions***

For Casey, the validity of his Armed Career Criminal sentence depends on whether at the time of sentencing he had three previous convictions for a violent felony or a serious drug offense.  See 18 U. S. C. § 924(e)(1).  According to the revised presentence report, Casey had five prior Maine convictions that qualified, four of them involving burglary.[10]  The question then is whether the Maine burglary convictions fit the portion of the ACCA that refers to a felony that is "burglary . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."  Id. § 924(e)(2)(B)(ii).  The government does not contend that, after Johnson, Casey's prior Maine burglary convictions, see 17-A

---

[9] I do not accept the government's argument based on United States v. Ruiz-Garcia, 886 F.2d 474, 476 (1st Cir. 1989).  In citing that case, the government contends that Casey cannot show prejudice because he agreed in his plea agreement that the ACCA applied to him and failed to argue that the ACCA did not apply in the presentence report or on direct appeal.  Gov't Resp. in Opp'n to Def.'s Mot. to Correct Sentence at 6 (ECF No. 72).  Casey's plea agreement, however, expressly stated that his "waiver of his right to appeal shall not apply to appeals based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  Agreement to Plead Guilty at 2–3 (ECF No. 52).  Moreover, Ruiz-Garcia involved a direct appeal where the appellant had not shown "any supportable basis in law or fact" to alter his sentence, 886 F.2d at 477, rather than a collateral challenge involving "a constitutional principle that had not been previously recognized but which is held to have retroactive application," Reed v. Ross, 468 U.S. 1, 17 (1984).  As I have determined above, Casey's Johnson claim is a novel constitutional claim with retroactive application to cases on collateral review.

[10] The revised presentence report lists five qualifying convictions.  See Revised Presentence Report ¶ 17.  They are three burglaries, an attempted burglary, and a drug conspiracy.  Id. at ¶¶ 26, 29, 30, 32, 33.  The government concedes that the drug offense does not qualify.  Gov't Resp. in Opp'n to Def.'s Mot. to Correct Sentence at 2 n.1 (ECF No. 72).

M.R.S.A. § 401, qualify under the so-called residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another"). Instead, it argues that binding First Circuit precedent, United States v. Duquette, 778 F.3d 314, 317–18 (1st Cir.), cert. denied, 136 S. Ct. 262 (2015), has determined that Maine's burglary statute qualifies as "generic" burglary and that Casey's prior convictions are therefore "enumerated" convictions for purpose of the ACCA.  Gov't Resp. in Opp'n to Def.'s Mot. to Correct Sentence at 7–9 (ECF No. 72).

For his part, Casey relies upon the Supreme Court's post-Duquette decision in Mathis v. United States, 136 S. Ct. 2243, 2250, 2257 (June 23, 2016), to argue that convictions under Maine's burglary statute no longer qualify.[11]

In Duquette, the First Circuit examined whether Maine's burglary statute contained the elements of generic burglary identified by the Supreme Court in Taylor v. United States, 495 U.S. 575 (1990).  Duquette, 778 F.3d at 317–18. The First Circuit determined that Maine's burglary statute did indeed "set[ ] forth the 'generic burglary' elements of (1) unlawful or unprivileged entry into, or remaining in, (2) a building or structure, with (3) intent to commit a crime."  Id.[12]

---

[11] Unlike its argument about Johnson, the government has not argued that the Mathis analysis should not be applied to Casey's sentence.  Instead, it argues that Mathis does not alter the Duquette analysis.

[12] Under Maine's burglary statute, an individual is guilty of burglary when she "enters or surreptitiously remains in a structure knowing that that person is not licenced or privileged to do so, with the intent to commit a crime therein."  17–A M.R.S.A. § 401(1).  The statute provides that "structure" means "a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles and other conveyances whose primary purpose is transportation of persons or property *unless such vehicle or conveyance, or a section thereof, is also a dwelling place.*"  17-A M.R.S.A. § 2(24) (emphasis added).  In turn, a "dwelling place" means "a structure that is adapted for overnight accommodation of persons, or sections of any structure similarly adapted."  17-A M.R.S.A. § 2(10).

Consequently, the First Circuit concluded that a Maine burglary conviction qualifies as a violent felony under the ACCA.  Id. at 318.

The next year in Mathis, the Supreme Court ruled that Iowa's burglary statute, Iowa Code § 702.12, covered more conduct than generic burglary and did not qualify as a predicate violent felony under the ACCA.[13]  Acknowledging the wide range of land, water, and air vehicles specified in Iowa's burglary statute, the Supreme Court determined that the Iowa statute "defines one crime, with one set of elements, broader than generic burglary—while specifying multiple means of fulfilling its locational element, some but not all of which (i.e., buildings and other structures, but not vehicles) satisfy the generic definition." Mathis, 136 S. Ct. at 2250.  Because Iowa's burglary statute had a broader locational element than generic burglary, the Court held that the Mathis's prior burglary convictions could not support an ACCA sentence.  Id. at 2257.

In the First Circuit, the "law of the circuit" doctrine makes a prior First Circuit decision "inviolate absent either the occurrence of a controlling intervening event (e.g., a Supreme Court opinion on the point; a ruling of the circuit, sitting en banc; or a statutory overruling) or, in extremely rare circumstances, where non-controlling but persuasive case law suggests such a course." United States v. Chhien, 266 F.3d 1, 11 (1st Cir. 2001).  Thus, the question here is whether the Supreme Court's decision in Mathis constitutes "a controlling intervening event" such that district courts in the First Circuit should

---

[13] Iowa's burglary statute defined an "occupied structure" as "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value."  Iowa Code § 702.12.

no longer follow <u>Duquette</u>'s directive that Maine burglary qualifies as a violent felony under the ACCA. <u>Chhien</u>, 266 F.3d at 11.

In dictum,[14] another judge in this District has determined that even after <u>Mathis</u>, <u>Duquette</u> remains "the 'law of the circuit' and that this Court is bound by it unless and until the First Circuit decides to revisit <u>Duquette</u>." <u>Dimott v. United States</u>, No. 2:06-cr-6-GZS, 2016 WL 6068114, at *3–4 (D. Me. Oct. 14, 2016), <u>appeal docketed</u>, No. 16-2289 (1st Cir. Oct. 25, 2016). The <u>Dimott</u> court noted that, in light of <u>Mathis</u>, Maine's burglary statute could be read as "categorically reaching a broader range of places than generic burglary," but nonetheless concluded that "<u>Duquette</u> currently provides a binding answer to that question within the First Circuit." <u>Dimott</u>, 2016 WL 6068114, at *4. I follow <u>Dimott</u> and apply <u>Duquette</u>. Maine's burglary statute encompasses a narrower ranger of places than the Iowa statute in <u>Mathis</u>, which covered "any building, structure, [or] land, water, or air vehicle," Iowa Code § 702.12. By contrast, Maine burglary includes only "a building or other place designed to provide protection for persons or property against weather or intrusion" and certain "vehicles and other conveyances," 17-A M.R.S.A. § 2(24), that are "adapted for overnight accommodation of persons," 17-A M.R.S.A. § 2(10). Given the appreciable difference in locations covered by the Maine and Iowa burglary statutes, I do not consider <u>Mathis</u> ipso facto a definitive ruling that <u>Duquette</u> is wrong.

---

[14] I say dictum because the <u>Dimott</u> court first decided that the petition there was untimely. In doing so, the court ruled that <u>Mathis</u> did not announce a new substantive rule that was retroactively applicable to cases on collateral review. <u>Dimott</u>, 2016 WL 6068114, at *3. The government has made no such argument here.

I believe that Mathis has, however, cast significant doubt on the continued vitality of Duquette.[15]   In the wake of Mathis, Maine's burglary statute, which encompasses camping vehicles, trailers, sleeper trains, and airplanes and boats with sleeping accommodations, seems to have a broader locational element than generic burglary.[16]   But I leave that conclusion to the First Circuit.

---

[15] Dimott observed that, although Duquette preceded both Johnson and Mathis, the Supreme Court denied certiorari in Duquette, 778 F.3d 314 (1st Cir. 2015), cert. denied, 136 S. Ct. 262 (Oct. 5, 2015), a few months before deciding to review the Eighth Circuit's ruling in Mathis, 786 F.3d 1068 (8th Cir. 2015), cert. granted, 136 S. Ct. 894 (Jan. 19, 2016).  Dimott, 2016 WL 6068114, at *4.  "Given this timeline," the court determined that Mathis did not overrule Duquette.  Dimott, 2016 WL 6068114, at *4.  The Supreme Court itself, however, has "frequently said that the denial of certiorari imports no expression of opinion upon the merits of a case." Brown v. Allen, 344 U.S. 443, 456 (1953) (internal quotation marks omitted).  Thus, I respectfully disagree that either this court or the First Circuit should infer from the Supreme Court's denial of certiorari in Duquette, 136 S. Ct. 262, that Duquette survives Mathis.

[16] In addition to arguing Duquette, the government has cited Lussier v. United States, No. 15-2500 (1st Cir. June 20, 2016), as a post-Mathis First Circuit decision that Duquette still governs. Gov't Resp. in Opp'n to Def.'s Mot. to Correct Sentence at 8 (ECF No. 72).  Lussier, however, was decided before Mathis (June 20, 2016 vs. June 23, 2016).  The government also cited United States v. Herrold, 813 F.3d 595 (5th Cir. Feb. 12, 2016), cert. granted, judgment vacated, 2016 WL 4367616 (Oct. 11, 2016).  Gov't Resp. in Opp'n to Def.'s Mot. to Correct Sentence at 9–10 (ECF No. 72).  That, too, was a pre-Mathis decision.  In fact, in the wake of the Supreme Court's Mathis decision, other federal circuit courts have consistently applied Mathis to find state burglary statutes insufficient as qualifying enumerated felonies.  E.g., United States v. Ritchey, No. 15-2460, 2016 WL 6247122, at *8 (6th Cir. Oct. 26, 2016) (concluding that Michigan's breaking and entering statute was broader than generic burglary and could therefore not serve as a predicate offense under the ACCA); United States v. White, No. 15-4096, 2016 WL 4717943, at *7-8 (4th Cir. Sept. 9, 2016) (determining that "the West Virginia's burglary statute's reference to a dwelling house 'easily could cover' enclosures that are excluded from the generic definition of burglary, such as vehicles" and consequently did not constitute a violent felony under the ACCA (citation omitted)); United States v. Smith, No. 15-3033, 2016 WL 4626561, at *1 (7th Cir. Sept. 6, 2016) ("In light of Mathis, the government now concedes that it is unable to demonstrate that Smith's conviction for second-degree Missouri Burglary qualifies as a predicate felony under the Act."); United States v. Door, No. 14-30170, 2016 WL 4207977, at *1 (9th Cir. Aug. 10, 2016) (holding that, "in light of Mathis, Door's prior convictions for burglary in Washington are not violent felonies"); United States v. Pledge, No. 15-2245, 2016 WL 3644648, at *1 (8th Cir. July 8, 2016) (per curiam) (ruling that, following Mathis, the defendant could not be classified as an armed career criminal due to his prior conviction under Iowa's burglary statute).

## CONCLUSION

The petitioner's motion to correct his sentence under 28 U.S.C. § 2255 is

**DENIED**.

**SO ORDERED.**

**DATED THIS 3RD DAY OF NOVEMBER, 2016**

/S/D. BROCK HORNBY

**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

12